UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| DAVID J. TUCKER,<br><br>    Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Respondent. | CV 08-232-N-REB<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court is David J. Tucker's Petition for Review (Docket No. 1) seeking judicial review of the final decision of Respondent denying his claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.* This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order reversing and remanding the Commissioner's decision.

## I. ADMINISTRATIVE PROCEEDINGS

David J. Tucker ("Petitioner" or "Claimant") filed this application for SSI benefits on October 23, 2003 alleging disability beginning April 1, 2000 (later amended to April 16, 2002). (AR 16).[1] Petitioner's applications were denied initially (AR 46) and again after reconsideration

---

[1] It appears that Petitioner filed an earlier application for SSI benefits that was denied on July 8, 2002. (AR 31-34). Petitioner filed a request for reconsideration of the decision (AR 35, 37), which was denied on October 22, 2002 (AR 39). Subsequently, Petitioner filed a request for a hearing (AR 42) that was denied on May 30, 2003, because the Administrative Law Judge was unable to contact Petitioner at a previous address. (AR 26-28).

**MEMORANDUM DECISION AND ORDER- p. 1**

(AR 53).  Petitioner then filed a timely request for a hearing before an Administrative Law Judge ("ALJ") (AR 58).

The ALJ scheduled a hearing on November 8, 2005 (AR 59).  Petitioner and his sister, Ilene Moss, testified at the hearing (AR 324-25).  At the hearing, the ALJ asked Petitioner about a history of alcoholism, and Petitioner indicated that he had problems with alcohol in the past but had maintained relative sobriety after participating in an alcohol treatment program sometime in 2002.  (AR 342-43).  The ALJ asked that Petitioner submit these treatment records and any other medical records that would help the ALJ make a decision on his claim.  (AR 348).

In the course of reviewing Petitioner's claim after the hearing, the ALJ determined that more information was necessary in order to make a decision and ordered an additional consultative examination and scheduled a follow-up hearing on July 27, 2006.  (AR 373, 376).  Petitioner and an impartial vocational expert testified at this follow-up hearing.  (AR 374).

On September 20, 2006, the ALJ issued a decision denying benefits, reasoning that Petitioner has the residual functional capacity ("RFC") to perform past relevant work.  (AR 280).  The Appeals Council subsequently vacated the decision on the basis that the ALJ found the Petitioner able to perform past relevant work at a semi-skilled level when Petitioner's RFC limits him to unskilled work.  (AR 296).  The Appeals Council remanded the case to the ALJ with instructions to "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base."  (AR 297).

After remand from the Appeals Council, the ALJ held a third hearing on April 17, 2007.  (AR 299, 351).  At the hearing, Petitioner's counsel requested that the ALJ also reconsider

**MEMORANDUM DECISION AND ORDER- p. 2**

Petitioner's RFC arguing that the RFC in the ALJ's September 20, 2006 decision did not reflect the severity of Petitioner's mental limitations.  (AR 354-55).

On May 16, 2007, the ALJ issued a second decision denying Petitioner's application on the alternative bases that Petitioner retains the RFC to perform both past relevant work as well as work that exists in significant numbers in the national economy.  (AR 16-23).  The Appeals Council denied review (AR 8) and Petitioner filed the instant lawsuit seeking review of the ALJ's decision, which represents the Commissioner's final decision denying Petitioner SSI benefits.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards.  42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

With respect to questions of fact, this Court's task is to review the entire record to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401.  The ALJ is responsible for

determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457.

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citation omitted).

### III. DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a five-step sequential process to determine whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920 (1997). The first step in the sequential process requires the ALJ to determine whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If the answer is in the affirmative, disability benefits are denied. 20 C.F.R.

**MEMORANDUM DECISION AND ORDER- p. 4**

§ 404.1520(b).  In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity since his alleged onset date.[2]  (AR 18).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  Here, the ALJ found that Petitioner has the following severe impairments: depressive disorder; anxiety disorder, with mixed features of post traumatic stress disorder, social anxiety and panic disorder, with mild agoraphobia; avoidant personality disorder; and alcohol addiction, in reported full and stable remission with persisting alcohol amnestic disorder.  (AR 18).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is in the affirmative, the claimant is disabled and benefits are awarded.  20 C.F.R. § 404.1520(d).  In this respect, the ALJ concluded that Petitioner does not have an impairment, singly or in combination, that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (AR 19).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's RFC is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  Here, the ALJ found that Petitioner retains the RFC to perform medium exertion work with the following limitations: no work where containers of alcohol are served; no work where children left alone; no work with higher level social skills; can complete simple,

---

[2] The ALJ further states that the alleged onset date is April 1, 2000; however, in the next finding he states that the onset date is April 12, 2002.  (AR 18).  This mistake is not relevant to the Court's analysis of the decision on appeal.  However, to clarify, the correct onset date is April 16, 2002, as agreed at the July 27, 2007 hearing.  (AR 389-90).

**MEMORANDUM DECISION AND ORDER- p. 5**

non-complex work related tasks; some memory impairment with limited adaptive skills for new tasks or situations; and should work with minimal interaction with others. (AR 19). Based on this RFC, the ALJ found that Petitioner is capable of performing past relevant work. (AR 22).

If the ALJ finds that a claimant is able to perform past, relevant work, the inquiry ends, and the claimant is deemed not disabled. However, in this case, the ALJ also went through the fifth and final step of the evaluation process. At the fifth step, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). In the instant case, the ALJ found that Petitioner retains the RFC to perform medium exertion work, such as a laundry worker, warehouse worker, and cleaner II. (AR 23). The ALJ also determined that the Petitioner could perform a range of light, unskilled work such as assembly work, housekeeping cleaner, laundry worker, and sorter, agricultural produce. *Id.*

**B.     The ALJ Erred at Step Three of the Five-Step Evaluation Process.**

Petitioner raises two issues with the ALJ's decision. Petitioner argues the severity of his symptoms would preclude any work and the ALJ erred by not having a medical expert at the hearing. *Petitioner's Brief*, p. 4 (Docket No. 16). For the reasons set forth below, the Court finds that the ALJ erred at step three of the five-step evaluation process. The ALJ erred by not resolving conflicts and ambiguities in the evidence concerning the severity of the Petitioner's limitations in light of the specific listing requirements for affective disorder. Moreover, while a

**MEMORANDUM DECISION AND ORDER- p. 6**

medical expert is not a blanket requirement at all Social Security disability hearings, a medical expert should have been utilized in the instant case to resolve these conflicts and ambiguities.[3]

The ALJ determined that Petitioner has four severe mental disorders, none of which meets the listing requirements: affective disorder (12.04), anxiety-related disorder (12.06), personality disorder (12.08), and substance abuse disorder (12.09).  (AR 19).  Of these, the evidence in the record suggests that Petitioner's primary mental impairment is affective disorder, which is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."  20 C.F.R. Pt. 404, Subpt. P, App.1.

To support a listed impairment under 12.04, the Petitioner must demonstrate that he meets either the criteria in Parts A and B or those in C.  *Id.*  The ALJ focused solely upon the criteria in Part B and determined that Petitioner is mildly limited in his activities of daily living; moderately limited in his social functioning; moderately limited in his concentration, persistence and pace; and has had one or two episodes of decompensation.  (AR 19).  Based on these findings, the ALJ determined that Petitioner's limitations do not meet a listing level.  *Id.*

As discussed more fully below, the central problem with the ALJ's decision is that the evidence the ALJ relied upon is not sufficient to support this finding concerning the Part B criteria.  The ALJ cites to three medical reports (B-2F, B-6F, and B-7F), all forms completed by non-treating, non-observing state agency psychological consultants.  These forms, entitled

---

[3] This decision is focused upon the ALJ's finding at step three of the evaluation process.  Upon remand, the ALJ is instructed to further develop the record in this regard.  However, if the ALJ ultimately finds that the Petitioner is not disabled at step three, then the ALJ should reevaluate his step four findings in light of any new medical evidence in the record.

**MEMORANDUM DECISION AND ORDER- p. 7**

"Psychiatric Review Technique," specifically address the listing requirements from 20 C.F.R. Part 404, Subpart P, Appendix 1 and are consistent with the ALJ's findings. However, in light of the shortcomings of these forms and the weight of the evidence as a whole, the consulting psychologists' reports do not constitute sufficient, substantive evidence necessary to support the ALJ's findings.

The first report, B-2F (AR 177-90), was completed in October 2002 by the state agency psychological consultant, Dr. Sharon Underwood, PhD. (AR 177-190).[4] This form cannot provide support for the ALJ's decision, because it: (1) was completed at a time when Petitioner was still using alcohol and alcohol dependence was his primary diagnosis; (2) is based on limited evidence, and (3) does not reflect what limited evidence was in the record at that time.

The first report was based upon a "GAU" assessment performed by Pamela Ridgeway in March 2002. (AR 189). At that time, Petitioner's primary diagnosis was a substance abuse disorder. (AR 174, 177). In fact, Dr. Ridgeway had to reschedule her first interview with Petitioner, because he had been drinking the night before their scheduled appointment. (AR 172). In addition, Dr. Ridgeway felt that Petitioner would be able to work after proper treatment for his depression "provided that he is able to maintain sobriety." (AR 172).

Based solely upon Dr. Ridgeway's report, Dr. Underwood completed the first of three Psychiatric Treatment Review forms in the record. In the form, Dr. Underwood only analyzed the listing requirements for affective disorder and did not identify the existence of a single

---

[4] It appears Gerald Gardner, PhD, reviewed the form and determined that "[Dr. Underwood's] findings complete [sic] medical portion of the disability determination." (AR 177). Dr. Gardner was later employed to conduct two subsequent examinations of Petitioner discussed more fully below.

**MEMORANDUM DECISION AND ORDER- p. 8**

criterion from the Part A list (AR 180). Remarkably, Dr. Underwood's review was completed on the basis of Dr. Ridgeway's examination, but Dr. Ridgeway's report suggested the existence of four Part A criteria, including:

> (1) A pervasive loss of interest in most activities: Petitioner was homeless, could not keep a steady job due to "lack of interest," reported problems with social avoidance and decreased motivation, and was diagnosed with "significant depression;"
>
> (2) Sleep disturbance: "He reported difficulties sleeping";
>
> (3) Feelings of guilt and worthlessness: he accidentally but fatally shot a childhood friend at the age of 14); and
>
> (4) Thoughts of suicide: he was hospitalized in 1997 for suicide ideation and 1999 for a suicide attempt.

(AR 171-72).

Finally, the form was based on extremely limited evidence, specifically Dr. Ridgeway's report. Dr. Underwood states, "3/02 GAU eval is only evidence, claimant apparently lives in shelter and receives no health services." (AR 189). In addition, the form itself indicates that there is insufficient evidence, at least to the extent necessary, to evaluate the restrictions on Petitioner's activities of daily living. (AR 187).

For the above reasons, the October 2002 Psychiatric Review Technique form completed by Dr. Underwood cannot constitute substantial evidence for the ALJ to rely on in the process of evaluating the severity of Petitioner's mental impairments. Such a bare-based form simply has insufficient substance to support the weight of the ALJ's reliance upon it.

The second and third reports relied on by the ALJ, B-6F (AR 208-25) and 7F (AR 226-43), also Psychiatric Review Technique forms, were completed in December 2003 and January 2004 by Maximo Callao, PhD and Dave Sanford, Ph.D., respectively. Both doctors had the

**MEMORANDUM DECISION AND ORDER- p. 9**

benefit of an additional examination conducted in November 2003 by Gerald Gardner, Ph. D. (AR 200-07) and offer a more thorough analysis of Petitioner's impairments than was included in Dr. Underwood's October 2002 form.  Nonetheless, these reports, too, have weaknesses that ultimately also render them insufficient to support the ALJ's finding at step three of the Evaluation Process.

Both forms indicate that Petitioner's impairments are severe but not expected to last 12 months (AR 208, 226) and analyze Petitioner's impairments under affective disorders (12.04), mental retardation (12.05), anxiety-related disorders (12.06) and personality disorders (12.08). (AR 208, 226).  Both forms reflect that Petitioner demonstrates four of the Part A criteria, including sleep disturbance, psychomotor agitation, feelings of guilt or worthlessness, and difficulty concentrating or thinking.  (AR 211, 29).  Both state "CL noted to have Hx of alcohol abuse, now in sustained remission."  (AR 216, 35).  Finally, in terms of Part B criteria, both state that Petitioner has mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and one or two episodes of decompensation.  (AR 218, 36).  These final conclusions are what the ALJ relied upon in finding that Petitioner's impairments did not meet a listing level. (AR 19).

These reports do not provide the substantial evidence necessary to support the ALJ's decision.  First of all, they are forms, and Ninth Circuit case law demonstrates a preference for written reports over forms.  *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (citing *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983)).  Forms are, by nature, conclusory, lend themselves to hasty analysis, and do not allow the same room for nuance as does a written report.

**MEMORANDUM DECISION AND ORDER- p. 10**

Second, the reports are identical. While there are two forms in the record created by two different state agency psychological consultants, the forms have been completed in the exact same manner. For example, there is a "Functional Capacity Assessment" section of the forms that provides for a narrative assessment. (AR 224, 242). Here, both doctors have the exact same language included in this page-long, single-spaced narrative assessment. *Id.* Thus, for all practical purposes, the ALJ's finding is based on a single, conclusory, form report from a non-examining, consulting medical expert.

Third, Dr. Gardner's narrative reports from November 2003 and January 2006 (though they do not address the specific listing requirements under the Part B criteria) create an ambiguity concerning the severity of Petitioner's limitations. This ambiguity, coupled with the over-all weight of the evidence, overwhelms the medical evidence from the reports of the state agency psychological consultants.

In general, the ALJ may reject the opinion of an examining expert and adopt the opinion of a consulting expert only if the ALJ provides specific, legitimate reasons for doing so supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 931 (9th Cir. 1995). Here, Dr. Gardener's report does not specifically address the Part B criteria. Nonetheless, the report is inconsistent with the consulting physicians' reports to the extent that it describes Petitioner's impairments to be at a higher level of severity than the consulting physicians describe. At the very least, the report creates an ambiguity concerning the degree of Petitioner's limitations. The ALJ neither recognized this inconsistency nor resolved the ambiguity.

**MEMORANDUM DECISION AND ORDER- p. 11**

Dr. Gardner examined Petitioner on November 18, 2003 (AR 200), before the forms were completed; and, again, on January 19, 2006 (AR 251), two years after the forms were completed.

The Part B criteria require at least two of the following:

(1) Marked restriction of activities of daily living;

(2) Marked difficulties in maintaining social functioning;

(3) Marked difficulties in maintaining concentration, persistence, or pace; or

(4) Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App.1.

In the first report, Dr. Gardener provides a detailed summary of Petitioner's history and current symptoms and found that Petitioner "presents significant apathy and avolition which appears to be secondary to his depression. He also describes considerable difficulty tolerating being in the presence of others and lives a very isolated lifestyle." (AR 206). Dr. Gardner further concluded that "[h]e would seem likely to have difficulty tolerating ordinary work-related social interactions over an extended period" and "[h]is overall adaptive functioning appears to be quite impaired by his apathy and avolition related to his depression and social avoidance." (AR 206). *Id.* Apparently under the assumption that Petitioner would be eligible for Social Security disability benefits, Dr. Gardner concluded the November 2003 report with the admonition that "[g]iven [Petitioner's] difficulty attending to his basic needs and his possible history of alcohol abuse, he would best have a payee." (AR 206). In this first report, there is no other description or quantification concerning the severity of Petitioner's described impairments.

In the second report, Dr. Gardner had the benefit of observing Petitioner on two occasions over the course of just over two years, creating some degree of perspective on the

**MEMORANDUM DECISION AND ORDER- p. 12**

scope and persistence of Petitioner's impairments.  After a second examination, Dr. Gardner prepared a narrative report and completed a form entitled "Medical Source Statement of Ability to do Work-Related Activities (Mental) (AR 26061).  While this form does not directly refer to the Part B criteria for affective disorders, Dr. Gardner said in his report that Petitioner is markedly limited in five areas of work activities: (1) perform activities within a schedule, maintain regular attendance, and be punctual (if required to interact with others); (2) work with or near others without being distracted by them; (3) interact appropriately with the public; (4) accept instructions and respond appropriately to criticism from supervisors; and (5) respond appropriately to changes in the work setting.  (AR 260-61).

      The marked limitations identified by Dr. Gardner comport, in part, with marked "limitations in social functioning" from the Part B criteria from 12.04 above.  This marked level of limitation is inconsistent with the information in the forms from the state psychological consultants, who found Petitioner had "moderate" limitations in social functioning.  Moreover, this difference in measuring the degree of Petitioner's limitations creates an ambiguity concerning the severity of Petitioner's other limitations.  This ambiguity is further supported by other, more compelling evidence in the record, which suggests a higher level of dysfunction than the state psychological consultants determined in three of the four Part B criteria.

      When reviewing Petitioner's record, it is important to note that Petitioner is homeless and has been living on the streets in Spokane and Coeur d'Alene for at least seven years (AR 255).  This fact in and of itself suggests a level of limitation with regard to activities of daily living well-above the "mild" range found by the consultants.  In addition, there is evidence in the record that Petitioner does not engage in any social, community, or recreational activities.  He

**MEMORANDUM DECISION AND ORDER- p. 13**

does not go to the movies, engage in sports activities, go to church, or involve himself in any sort of clubs or other social activities. (AR 145). He does not like to be around people (AR 154) and avoids them, even at the shelter, where he sleeps only when it is too cold to camp. (AR 252, 54). He does not have contact with his previous wives or children (AR 171) and has a relationship with only one sister from his biological family and only upon her effort. He does not bathe or comb his hair regularly (AR 148), has difficulties with authority, (AR 152) and cries a lot (AR 153). In terms of his daily activities, he typically walks up and down the streets, sleeps in the woods, and gets two meals at the shelter. (AR 142-46). All of these facts suggest a high level of limitation with regard to activities of daily living.

With regard to Petitioner's problems with maintaining concentration, persistence, or pace, Petitioner and his sister repeat throughout the record that Petitioner cannot concentrate or follow directions and has increasing problems with his memory. (AR 145, 154, 163). He has consistently scored a Global Assessment of Function in the 40's with severe cognitive limitations. (AR 206, 260). In addition, it should be noted that Petitioner's work history reflects that he has never had a job for over a year and has moved around a lot throughout his life. (AR 86-90, 134-41). His sister states that she has never known him to hold down a job (AR 148), and he has always needed someone to take care of him. (AR 150).

In summary, the forms relied upon by the ALJ, completed by non-treating, non-observing state agency psychological consultants, are not the substantial evidence necessary to support the ALJ's decision, particularly when considered against the full record. This Court cannot find that a reasonable mind could conclude on the basis of the evidence in the record that Petitioner did not meet the listing requirements. Therefore, the case must be remanded for further proceedings.

### 3. No Medical Expert at the Hearing

Generally, it is in the ALJ's discretion to have a medical expert available at the hearing. However, in the instant case, given this conflicting evidence in the record, the ALJ erred by not having a medical expert available at the hearing.

Generally, the burden is on the Petitioner to prove disability. *See* 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). *Accord Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990). As the Code of Federal Regulations explains:

> [Y]ou have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis.

20 C.F.R. § 404.1512(a) (2000). *Accord* 20 C.F.R. § 404.1512(c) (2000) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled"). Similarly, Petitioner has the burden of proving that his impairment meets a listing level. *Frost v. Barnhart*, 314 F.3d 359, 366 (9th Cir. 2002).

At the same time, the ALJ has a special duty to develop the record fully and fairly in order to ensure that the claimant's interests are fully considered. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). This is true even when the claimant is represented by counsel. *Id.* The special duty is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

**MEMORANDUM DECISION AND ORDER- p. 15**

To be fair, in the course of determining Petitioner's application for benefits, the ALJ appropriately ordered an additional consultative examination and held a second hearing for the purposes of better developing the record. However, the ALJ did not request the presence of a medical expert at the hearing. While not always necessary, a medical expert was especially important to the instant case, because there is conflicting and ambiguous evidence in the record regarding the severity of Petitioner's limitations and the existence of the listing criteria specific to affective disorders.

## IV.  CONCLUSION

In short, the ALJ erred at step three of the five-step analysis. This Court was persuaded by the evidence indicating that Petitioner's impairments likely meet the listing level. Nonetheless, the Court is acting as a reviewing court must respect, to the extent required by law, the ALJ's role as fact-finder. Here, those roles are best kept separate by remanding the case for proper consideration by the ALJ, with specific attention to developing the record and resolving all ambiguities concerning Petitioner's mental impairments and whether Petitioner meets the listing requirements for any of his mental impairments either singly or in combination. If the ALJ determines that Petitioner's impairments do not meet a listing level, then further analysis is necessary to support a residual functional capacity determination at step four in light of any further medical testimony or other medical evidence in the record.

///

///

///

**MEMORANDUM DECISION AND ORDER- p. 16**

## V. ORDER

Based on the foregoing, the decision of the Commissioner is REVERSED and the case is remanded to the ALJ for further proceedings consistent with this decision.



DATED: September 8, 2009

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER- p. 17**